UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19CV-00265-GNS

**NICOLE M. HILL**                                                                                                          **PLAINTIFF**

**VS.**

**ANDREW SAUL,**
*Commissioner of Social Security*                                                                                **DEFENDANT**

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION

The Commissioner of Social Security denied Nicole M. Hill's ("Hill") applications for supplemental security income benefits and disability insurance benefits. Hill seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Both Hill (DN 15) and the Commissioner (DN 19) have filed a Fact and Law Summary. The District Judge has referred the case to the undersigned United States Magistrate Judge (DN 13) to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law, and Recommendations. 28 U.S.C. § 636(b)(1)(B).

I. Findings of Fact

Nicole M. Hill is 47 years old, attended school through the eleventh grade, and last worked as a high school janitor in 2010 and 2011. (Tr. 44-45). Hill claims she stopped working as a janitor because of problems with her blood pressure and "an altercation at the job." (Tr. 46). She states that she can no longer work because her back hurts all of the time, she can't sit or drive for long, and she sometimes has trouble standing and walking. (Tr. 47). Hill's typical day consists of taking

pain medications, sleeping, and occasionally helping her daughters with household chores. (Tr. 47-48).

Hill originally filed applications for supplemental security income benefits ("SSI") under Title XVI and disability insurance benefits ("DIB") under Title II, alleging disability beginning March 30, 2011. (Tr. 69). These applications were denied initially and on reconsideration, and after holding a hearing, ALJ Patrick Kimberlin III ("ALJ Kimberlin") issued an unfavorable decision on September 13, 2013. (Tr. 82-83).

Within weeks of ALJ Kimberlin's denial, Hill suffered a ruptured rotator cuff, which required surgical repair in November of 2013. (Tr. 42). Hill then refiled her applications for SSI and DIB, claiming she became disabled on September 14, 2013 (Tr. 275, 282), as a result of diabetes, high blood pressure, thyroid problems, Graves disease, diverticulitis, hernia, right shoulder pain, back pain, neck pain, stomach problems, rheumatoid arthritis, and neuropathy. (Tr. 310). Her applications were denied initially (Tr. 113, 130) and again on reconsideration (Tr. 131, 132). Administrative Law Judge Anne Benton ("ALJ Benton") conducted a hearing in Louisville, Kentucky, on January 9, 2018. (Tr. 38). Hill attended the hearing with her attorney. (*Id.*). An impartial vocational expert also testified at the hearing. (*Id.*). ALJ Benton issued an unfavorable decision on February 20, 2018. (Tr. 30).

ALJ Benton applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Hill has not engaged in substantial gainful activity since September 14, 2013, the alleged onset date. (Tr. 15). Second, Hill has the severe impairments of degenerative disc disease of the cervical spine and lumbar spine; arthritis of the bilateral knees;

2

status post hernia repair; status post right rotator cuff repair; Grave's disease; diabetes mellitus; obesity; depression; and anxiety. (Tr. 15). Third, none of Hill's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 16). Between steps three and four, ALJ Benton found that Hill has the residual functional capacity to perform light work except that Hill:

> (1) can occasionally climb stairs and ramps; (2) can never climb ladders and scaffolds; (3) can frequently balance; (4) can occasionally stoop, kneel, crouch and crawl; (5) can frequently, but not constantly, reach in all directions with the upper dominant extremity; (6) must avoid concentrated exposure to dust, odors, fumes and other pulmonary irritants; (7) must avoid all exposure to hazards such as unprotected heights and moving, mechanical parts; and (8) can occasionally drive a motor vehicle. Further, [Hill] (1) can understand, remember and carry out simple instructions; (2) can have occasional interaction with supervisors and coworkers; (3) can have no interaction with the public; (4) can only make simple, work-related decisions; (5) can only tolerate occasional change in work location; and (6) is unable to work at a strict production rate such as that required to work on an assembly line.

(Tr. 18). ALJ Benton noted within Hill's RFC discussion that a prior ALJ had also found Hill capable of performing light work with various environmental and mental limitations. (Tr. 26). Applying *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), ALJ Benton indicated she considered the additional evidence following the prior ALJ's determination, notably Hill's rotator cuff surgery and lumbar spine surgery, and included additional limitations to reflect this later evidence. (*Id.*).

Fourth, ALJ Benton found Hill could not perform any of her past relevant work. (Tr. 28). Fifth and finally, considering Hill's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (Tr. 29).

ALJ Benton concluded that Hill was not under a disability, as defined in the Social Security Act from September 14, 2013, through February 20, 2018, the date of his decision. (Tr. 30). Hill

appealed ALJ Benton's decision. (Tr. 270-72). The Appeals Council declined review. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Hill appealed to this Court. (DN 1).

## II. Standard of Review

When reviewing an Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan,* 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

## III. Conclusions of Law

### A. Finding No. 4: Listed Impairments

Hill first argues that "ALJ Benton found that Plaintiff failed to meet or equal any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(g) and 416.920(g))." (DN 15-1, at p. 7). When a claimant takes issue with an administrative law judge's

4

evaluation of whether she meets a listed impairment, the claimant must present "specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency." *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) (citing *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987)); *see also Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 350 (6th Cir. 1988) (explaining that the claimant bears the burden of demonstrating that her impairments meet or medically equal a listed impairment). Unfortunately, Hill has entirely failed to develop any argument regarding ALJ Benton's evaluation of listed impairments. She neither identifies a specific listing that she allegedly meets nor provides any support for meeting a specific listing from the regulations. Because Hill merely restates ALJ Benton's Finding No. 4 in a cursory manner, "unaccompanied by some effort at developed argumentation," the Court recommends this argument be deemed waived and not further considered substantively. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997); *see also Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007) ("We decline to identify and address the arguments that Petitioner could have made but did not, and instead find he has waived any possible challenge to the dismissal of [his] claims . . .").

## B. Finding No. 5: Residual Functional Capacity

Hill next appears to make two challenges to ALJ Benton's Finding No. 5, the residual functional capacity ("RFC") determination. The RFC finding is the administrative law judge's ultimate determination of what a claimant can still do despite her physical and mental limitations. 20 C.F.R. §§ 416.945(a), 416.946. The administrative law judge bases her RFC finding on a review of the record as a whole, including a claimant's credible testimony and the opinions from a

claimant's medical sources. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

1. Treating Physician Opinions

First, Hill claims that ALJ Benton committed legal error by failing to follow SSR 96-2P, which "controls the consideration of medical opinions offered by a treating source." (DN 15-1, at p. 8). Because she believes she had a treating relationship with several physicians (Norton Cardiology Specialists, Jewish Hospital, Eugene Giles Sr. MD, Steven F. Samuel MD, Bluegrass Pain Consultants, Mehdi Poorkay MD, Norton CMA Endocrinology, Advanced ENT & Allergy, Norton Neuroscience Institute, Norton Leatherman Spine Center, and Norton CMA Fincastle), Hill alleges that ALJ Benton should have determined whether these opinions were entitled to controlling weight. (*Id.* at pp. 9-10).

Hill is correct that SSR 96-2P describes the so-called treating physician rule, which is also codified at 20 C.F.R. § 404.1527(c)(2). This "rule" requires that administrative law judges give controlling weight to a treating source's medical opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in the case record[.]" SSR 96-2P, 1996 WL 374188, at *1; 20 C.F.R. § 404.1527(c)(2). When an administrative law judge determines that a treating source should not receive controlling weight, she applies factors from the regulations to determine the appropriate weight to assign the opinion. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These factors include the length, nature, and extent of the treatment relationship, the supportability and consistency of the opinion compared to other evidence in the record, and the treating source's area of specialty.[1] 20 C.F.R. § 404.1527(c)(2)(i)-

---

1 The regulations, however, do not require an exhaustive factor-by-factor analysis to satisfy the rule. *See*

(ii), (c)(3)-(5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Yet even though Hill generally identifies the correct standard for evaluating treating physician opinions, she does not identify specific source opinions in the record that should have been afforded controlling weight and does not otherwise state how ALJ Benton improperly weighed any particular source opinion. Hill, instead, lists eleven providers that she believes should receive controlling weight based on the standard outlined above.

The treating physician rule does not apply when the alleged treating physician has not offered an opinion to which the administrative law judge can defer. *Pedigo v. Astrue*, No. 1:09-CV-03, 2009 WL 6336228, at *6 (E.D. Tenn. Dec. 14, 2009) (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) (where treating physician offered no unequivocal opinion concerning claimant's ability to work, ALJ's decision to discount diagnosis was not error)). An opinion, rather than a mere diagnosis, is necessary to trigger the rule of deference to a treating physician because disability is determined by reference to the functional limitations imposed by a condition, not the condition itself. *Id.* (citing *Foster v. Bowen*, 853 F.2d 483, 488-89 (6th Cir. 1988)). The regulations define an "opinion" as a "judgment[] about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis, and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). After reviewing the lengthy record in this case, the Court finds that while ample medical records from her listed providers exist, none of these listed providers completed an "opinion" as defined by the regulations that would trigger any deference to the treating physician rule.

---

*Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011).

The Court also finds ALJ Benton appropriately weighed the medical opinions in the record and discussed the medical records from the providers that Hill listed. Specifically, ALJ Benton reviewed and weighed the treating orthopedist opinion of Dr. Cyna Khalily, the consultative examination opinion of Dr. G. Stephen Perry, and the state agency physician and psychologist opinions of Allen Dawson, Michelle Bornstein, and Ed Ross. (Tr. 26-27). Because Hill appears to take no issue with the evaluation of these opinions, further analysis under SSR 96-2P and 20 C.F.R. § 404.1527(c)(2) is unnecessary.

For these reasons, the Court finds ALJ Benton did not fail to evaluate any additional opinions from Hill's treating physicians. Finding no error of law, the Court recommends the Commissioner's decision as to this issue be affirmed.

## 2. Hill's GAF Score

Second, Hill argues that ALJ Benton made an error of law by improperly discounting her Global Assessment of Functioning ("GAF") score in her RFC determination. (*Id.* at pp. 10-11). Hill argues that because the GAF score came from an examiner which the SSA hired to provide evidence for an adjudicative determination, the score was a determination of disability and could not be discounted in the manner that ALJ Benton did. (DN 15-1, at p. 11). Hill states that at the time the decision was rendered, ALJ Benton had to consider the GAF score in making her RFC determination. (*Id.*).

GAF examinations measure "psychological, social, and occupational functioning on a continuum of mental health status from 0 to 100, with lower scores indicating more severe mental limitations." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009). The Sixth Circuit describes a GAF score as "a subjective determination that represents the clinician's judgment of

the individual's overall level of functioning." *Id.* (quoting *Edwards v. Barnhart*, 383 F.Supp.2d 920, 924 n. 1 (E.D. Mich. 2005)). There is no statutory, regulatory, or other authority requiring an administrative law judge put stock in a GAF score. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)). In fact, an administrative law judge's failure to refer to a GAF score does not make her RFC analysis unreliable because while it may be of "considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002).

Here, Dr. Perry, a consultative examiner, opined that Hill had a GAF Score of 55-59. (Tr. 27). Such a GAF score signals the existence of "moderate difficulty in social or occupational functioning." *White*, 572 F.3d at 276 (quoting *Edwards*, 383 F. Supp. 2d at 924 n.1). In weighing Hill's GAF score, ALJ Benton recognized that such scores are generally "given little weight in the disability process" because they "do not describe specific work related limitations or objective medical abnormalities." (Tr. 27). ALJ Benton continued: "[a]lthough GAF scores are considered a form of opinion evidence, other evidence may outweigh GAF scores, and in this case, the other evidence is more informative and is given more weight, as described above." (*Id.*).

Contrary to Hill's accusations, ALJ Benton clearly considered Dr. Perry's GAF score as a form of opinion evidence in assessing Hill's RFC. ALJ Benton ultimately discounted the GAF score based on her evaluation of the other medical evidence. ALJ Benton did not err in this respect. The "more informative" evidence that ALJ Benton mentions includes Dr. Perry's opinion and the state agency psychologist opinions, to which ALJ Benton afforded significant weight. Dr. Perry observed that Hill had moderate concentration difficulties but that her memory and cognitive

abilities were intact and that she was calm and cooperative during the exam but expressed irritability about dealing with other people. (Tr. 942-46). ALJ Benton found that Dr. Perry's observations aligned with his opinion that Hill was capable of understanding, remembering and carrying out simple instructions; tolerating mildly stressful situations; and interacting with others. (Tr. 26). Similarly, ALJ Benton found that the state agency psychologists' determination that Hill was capable of performing simple, routine tasks with occasional contact with coworkers and supervisors and no contact with the general public were consistent with Dr. Perry's consultative exam and the longitudinal record. (*Id.*). The Court, accordingly, finds ALJ Benton's decision to afford Hill's GAF score less weight than Dr. Perry's opinion and the state agency psychologist opinions is supported by substantial evidence in the record and comports with the applicable laws.

## IV. Recommendation

For the foregoing reasons, the Court finds the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be **AFFIRMED.**

Regina S. Edwards, Magistrate Judge
United States District Court

December 20, 2019

NOTICE

Therefore, under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.  Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court.  If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).


Copies:        Counsel